THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* PAUL MARTIN, Defendant.

County Court, Columbia County, December 29, 1966.

*Adolph Matties, Public Defender,* for defendant. *Frank S. Hogan, District Attorney (James Mosely* of counsel), for plaintiff.

WILLIAM F. CHRISTIANA, J. Defendant's application for a writ of habeas corpus, addressed to the County Court of the county of his confinement, has been allowed. He has accordingly been returned to this court for resentence. Sentence was originally imposed by this court on April 1, 1964 following defendant's plea of guilty to the crime of murder second degree. Such plea was offered in satisfaction of an indictment which charged defendant with first degree murder, and was taken upon the recommendation of the office of the District Attorney of New York County, from whence the venue of the case had been transferred to Columbia County.

On resentence, and in response to the allocution question, mandated by section 480 of the Code of Criminal Procedure, defendant offered several causes in arrest of judgment. Only one in the opinion of this court merits attention.

Defendant claims that upon his original sentence this court failed to give him warning of the particulars specified by section 335-b of the Code of Criminal Procedure before accepting his plea of guilty. A review of the record taken when judgment was originally pronounced discloses that defendant was not informed of the provisions of section 335-b at the time his plea of guilty was taken.

Section 335-b provides in effect that where a different or additional punishment is prescribed or authorized by reason of a previous felony conviction, or convictions, the court before accepting a guilty plea, must inform a defendant that by reason of his prior felony record, he will be subject to additional or different punishment.

It is to be especially noted that the statute refers to a crime "for which a different or additional punishment is prescribed or expressly authorized" by reason of such previous conviction. The different or additional punishment which is automatically imposed upon a multiple felony offender is set forth in section 1941 of the Penal Law, as follows:

"Except as provided in subdivision two of this section, a person, who, after having been once or twice convicted within this state, of a felony, of an attempt to commit a felony, or, under the laws of any other state, government, or country, of a crime which, if committed within this state, would be a felony, commits any felony, within this state, is punishable upon conviction of such second or third offense, as follows:

"If the second or third felony is such that, upon a first conviction, *the offender would be punishable by imprisonment for any term less than his natural life,* then such person must be sentenced to imprisonment for an indeterminate term, the minimum of which shall be not less than one-half of the longest term prescribed upon a first conviction, and the maximum of which shall be not longer than twice such longest term." (Emphasis supplied.)

The punishment for murder in the second degree is defined in the first portion of section 1048 of the Penal Law which reads: "Murder in the second degree is punishable by imprisonment under an indeterminate sentence, the minimum of which shall be not less than twenty years and the maximum of which shall be for the offender's natural life".

In *People* v. *Buckley* (178 Misc. 545, 546) the court ruled in the following language that section 1941 of the Penal Law does not apply to punishment for homicide second degree: " The first question confronting the court is whether section 1941 applies to a conviction of murder second degree. It is readily apparent that if section 1941 of the Penal Law applies to second and third offenders convicted under section 1048 of the Penal Law of murder second degree, then the court should have imposed upon the above-named defendant a mandatory sentence. The minimum of that sentence would have to be maximum for the first offense, to wit, for the offender's natural life, and the maximum twice such term, to wit, twice his natural life, with the privilege to the court of increasing the punishment provided by section 1944 of the Penal Law by a further term of from five to twenty-five years for being armed with a dangerous weapon. This leads to an absurdity and could never have been the intent of the Legislature."

The court continued (pp. 547–548):

" Clearly in the first instance the penalty could not be increased no matter how many previous convictions were of record against the offender. The legislative intent as to the other two instances is equally clear, when it gave to the court the power to impose a sentence of not less than twenty years to life. The minimum of a term not less than twenty years gave to the court the power to increase such minimum to any number of years according to the previous history of the convicted person, including any number of previous felonies. (*People ex rel. Mummiani* v. *Lawes,* 258 App. Div. 643.) Any increase of the minimum sentence by the court is a matter of form, as under an indeterminate sentence the offender's imprisonment is at the will of the Parole Board and ' an indeterminate sentence is regarded as a sentence for the maximum term prescribed.' (*People* v. *Washington,* 264 N. Y. 338.) Whether it was intended to limit the power of the sentencing judge to determine the ultimate incarceration of the offender is beside the point, as by statute it has been so limited.

" Serious consideration of section 1941 of the Penal Law leads to the conclusion that that section does not apply to the punishment provided in section 1048 for murder second degree. As an interesting side light, it is apparent that the crimes of murder first and second degrees are expressly excluded from the fourth offender statute. (Penal Law, § 1942.) There is thus no increased punishment provided by statute in the event of previous convictions of one convicted of murder, second degree. Recourse must alone be had to section 1048. Section 2189 of the Penal Law does not apply. For even if the last sentence

could be construed to have application to murder second degree, no one could estimate what would be one-half the term of a living prisoner's natural life.''

Finally, the court observed (p. 548): '' There is in the eyes of the statutory law no second, third or fourth offender convicted of murder, second degree, as no increased punishment has been provided. The imposition of an indeterminate sentence when the maximum is life is more severe than a definite sentence. For the offender must, so long as he lives, be under the control of the Board of Parole, whose power of incarceration ceases only with the death of the prisoner. The power of fixing a definite termination of sentence for murder, second degree, being no longer vested in the sentencing judge, the formality of determining the previous convictions of the offender is simply a matter of record for the future guidance of the Board of Parole.''

Defendant nevertheless argues that while his maximum sentence could not be increased, the minimum could be, and consequently if his punishment may not be additional, it could be different, and for this reason, he should have been admonished of the provisions of section 335-b.

It is of course indisputable that the minimum term for second degree homicide may be enhanced, in the discretion of the court, and in that sense, it may be said that defendant's punishment can be different or additional. The maximum term of the sentence, however, must be life imprisonment, which is obligatory and cannot be altered by the court. *Matter of McHugh* v. *Joyce,* 2 A D 2d 976; *People* v. *Lubchuk,* 218 N. Y. S. 2d 348.) Consequently, if an indeterminate sentence is construed as a sentence for the maximum term, and since the maximum term for murder second degree must be imprisonment for a person's natural life, then in legal effect, such sentence cannot be either different or increased. Thus, section 335-b of the Code of Criminal Procedure would have no significance. Even if defendant had been a multiple felony offender to the fourth degree, he could not be additionally nor differently punished. (*People* v. *Washington; People* v. *Buckley, supra.*)

The obvious purpose of section 335-b is to safeguard and prevent a defendant from offering a plea of guilty to a felony without comprehending that if he has been previously convicted of a felony, his punishment must be automatically more severe than that which would be meted out to a first felony offender. (*People ex rel. Colan* v. *La Vallee,* 14 N Y 2d 83.)

In the case at bar, when judgment was pronounced against him, defendant became a first felony offender in that he had no previous felony record. Prior to the transfer of the venue of

his case from New York County to Columbia County, the Supreme Court of New York County had assigned two experienced and able attorneys to represent him. Both counsel appeared for him at the time he entered his guilty plea and when judgment was passed. Before his plea of guilty was accepted, defendant was interrogated at length by the court as to his participation in the crime of which he stood accused. His answers, made under scrutiny of his counsel, amounted to a judicial confession of guilt. He was sentenced to an indeterminate term, the minimum of which was not less than 20 years and the maximum of which was for his natural life. Assuming that section 335-b of the code is applicable to homicide second degree, and perhaps it may be, it is difficult to perceive how defendant in this instance has been prejudiced, denied a substantial right or unafforded a procedural safeguard by the failure to inform him of the provisions of the statute.

The Public Defender, nevertheless, suggests that defendant might have hesitated or refused to offer his guilty plea had he known the court could increase the minimum term of his sentence regardless of the legal effect of the maximum term. While there may be some merit in this argument, particularly if an additional minimum sentence had resulted, no additional minimum punishment was in fact imposed. Thus, however hesitant defendant may have been in pleading guilty, either from a legal or a pragmatic viewpoint, the end result of his status was the same. While statutory protections afforded a defendant in criminal cases cannot be lightly overlooked, neither should they be employed to a point where the judicial process is made to hinge on slavish adherence to and compliance with technical rules of procedure, particularly where a defendant, as here, has suffered no actual detriment. To set aside the judgment of conviction in this case would, in my opinion, be unwarranted.

Accordingly, this court rules on the record before it that the omission to advise defendant of section 335-b of the Code of Criminal Procedure prior to accepting his plea of guilty was neither prejudicial to nor an impairment of a substantial right in his case and is not a sufficient cause to arrest judgment.

No sufficient cause being shown, judgment is pronounced.